IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-00738-MSK

MIKEL J. ATWOOD,

       Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security Administration,

       Defendant.

_____

## OPINION AND ORDER REVERSING AND REMANDING CASE
_____

THIS MATTER COMES before the Court as an appeal from a denial of disability

insurance benefits and supplemental security income under 42 U.S.C. §§ 401-433 and 1381-

1383(c).  Having reviewed the Social Security Administrative Record (**#5**), the briefs of the

parties (**#10**, **13**, and **14**), and supplemental briefs requested by the Court (**#17** and **19**), and

having considered the oral arguments of counsel, the Court **FINDS** and **CONCLUDES** as

follows.

### I.  JURISDICTION

The claimed disability period began February 1, 2002.  The disability hearing was

conducted in October 2003, and the Administrative Law Judge's (hereafter ALJ) decision was

issued April 6, 2004.  The Appeals Council declined review of the ALJ's determination, making it

the Commissioner's decision for purposes of judicial review.  The Claimant timely filed this

action. The Court therefore finds that administrative remedies have been exhausted and the

decision of the Commissioner of Social Security is ripe for review, and the Court exercises

jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.   ISSUE PRESENTED

The Claimant, Mikel J. Atwood, sought a determination of disability based upon

degenerative disk disease of the lumbar spine and side effects related to HIV treatment.  Using the

standard 5-step analytical framework, the ALJ determined at Step 1 that Mr. Atwood had not

been engaged in substantial gainful activity since February 1, 2002.  At Step 2, the ALJ

determined that Mr. Atwood had two severe impairments - HIV and degenerative disk disease in

his lumbar spine.  At Step 3, the ALJ determined that neither impairment was equivalent to a

Listed Impairment in Appendix, Subpart P, of Regulation No. 4 of the Social Security

Regulations.  At Step 4, the ALJ determined that Mr. Atwood had the residual functional capacity

(hereafter RFC) to perform a limited range of light work, subject to the following restrictions:

-        lift/carry no more than 20 pounds occasionally and 10 pounds frequently;

-        sit, stand and walk about 6 hours in an 8 hour workday;

-        push and pull subject to the lift/carry restriction;

-        occasional bending, squatting, kneeling, crawling and climbing;

-        no foot/leg controls with left lower extremity;

-        no interaction with the general public or complex tasks due to side effects from
         medications.

With these restrictions, the ALJ determined that Mr. Atwood could not perform his past relevant

work.  However, at Step 5, the ALJ determined that there are jobs in the regional or national

economies that Mr. Atwood could perform subject to the RFC limitations. As a consequence, the

ALJ concluded that Mr. Atwood was not disabled.

In his initial brief, Mr. Atwood contended that the ALJ erred by not giving appropriate weight to the opinions of Mr. Atwood's treating physicians regarding his "ability to work", and that the ALJ failed to provide "clear and convincing reasons for rejecting the Claimant's testimony of fatigue".  Neither argument was tied to a particular step in the analytical process nor addressed whether the ALJ made an error in application of the law or whether the determinations were unsupported by substantial evidence.  At the oral argument, the issues clarified and the Court requested additional briefing to address reformed issues.  Now the Court understands that Mr. Atwood  contends with regard to the RFC determination at Step 4, the ALJ erred:

1)      In assessing Mr. Atwood's credibility in conjunction with his complaints as to the side effects of antiretroviral medication; and

2)      By failing to give appropriate weight to the opinions of the Claimant's treating physicians.

The Commissioner responds that the ALJ's credibility determination was supported by substantial evidence and that the ALJ appropriately assessed the opinions of Mr. Atwood's treating physicians.

### III. MATERIAL FACTS

**A. Claimant's Testimony**

Mr. Atwood was born in 1965 and was 39 years old on the date of the ALJ's decision. He was diagnosed with HIV in June 1991 and previously has been awarded disability benefits for this condition.

He claimed that in February 2002, he became disabled due to the side effects of

antiretroviral treatment for AIDS, a back impairment and depression.[1]  The side effects included

nausea, persistent diarrhea and profound fatigue.

Mr. Atwood described the side effects of the antiretroviral medication as severe.  There

were times when he could not get out of bed except to go to the bathroom or when he would

awaken aware that he had already lost control of his bowels.  It was difficult for him to walk

across the street to his mother's house due to fatigue.  He would attempt to engage in a task, such

as washing dishes, and be unable to complete it and have to sit down due to fatigue.  He did not

have the energy to do housework or work in his yard.

**B.  Medical Treatment History**

Mr. Atwood was diagnosed with HIV in June 1991.  He worked until December of 1994,

then received Social Security Benefits until 1996 or 1997 when he returned to work.  In February,

2002, Mr. Atwood stopped working due to side effects caused by the antiretroviral medication

used to treat AIDS.

Mr. Atwood began treatment with antiretroviral medications at some undisclosed time

prior to the claimed disability period at issue in this case.  From March 2002 through the date of

benefits hearing, Mr. Atwood received medical treatment primarily from Dr. Amy Davis and Dr.

Michael Hughes.

In March 2002, he visited his physician with complaints of profound fatigue, unremitting

diarrhea, nausea and headaches.  Recognizing these symptoms to be common side effects of the

---

[1]There is no challenge based upon any assessment or treatment of Mr. Atwood's back problems or depression.  According to the medical evidence submitted by Mr. Atwood after the 2003 hearing, the degenerative disease in the lumbar region of his back was addressed by a successful partial hemilaminectomy with foraminotomy at the left L3-4 level.

antiretroviral drugs Mr. Atwood was taking and pending blood analysis, Mr. Atwood's antiretroviral medications were discontinued. The antiretroviral medication regime resumed on or shortly after the May 29, 2002, follow-up appointment. A month later Mr. Atwood reported feeling exhausted and that he had the flu, and on August 12, 2002 reported to Dr. Michael Hughes, that he was suffering from fatigue, headaches and insomnia.

By September 4, 2002, the Claimant was better tolerating his antiretroviral medications (Trizivir and Kaletra). But on October 28, 2002, Mr. Atwood again reported suffering from headaches, chronic diarrhea, and fatigue as side effects of the antiretroviral medications. Dr. Hughes noted that Mr. Atwood had been using more Vicodin than expected, which Mr. Atwood explained was necessary to alleviate the medication-induced headaches. On October 29, 2002, Dr. Hughes opined that Mr. Atwood was unable to be "gainfully employed" due to the side effects.

Dr. Davis stated in a letter dated November 5, 2002 that Mr. Atwood had had "intermittent difficulty with medications" and that he has "been struggling with the adverse effects of medications. He has nausea, vomiting and fatigue which he feels has been disabling enough to prevent him form being able to continuously attend employment. . . . Since these medications are very difficult to take and often do cause significant gastrointestinal distress, this may cause a significant amount of absenteeism that he would be unable to hold a job".

Dr. Davis' notes of a follow up examination of Mr. Atwood on January 14, 2003, reflect that he had ceased taking Kaletra approximately one month before and that his problem with diarrhea had "completely resolved".

At sometime between January and May 2003, Mr. Atwood had problems with his back.

An MRI in February revealed varying degrees of stenosis at L2-L5.  As a result he underwent a partial hemilaminectomy at the L2-L3 level and discectomy at the L3-l4 level in May, 2003.

On July 2, 2003, Mr. Atwood was seen by Dr. Steven Johnson for a decline in his CD4 count and polydrug resistance.  Dr. Johnson noted that Mr. Atwood had been off of antiretroviral medication since May of 2003 due to anemia, was hospitalized for the anemia and had experienced fatigue since that time.  He restarted the antiretroviral medication.  In a follow-up appointment on August 11, 2003, Dr. Davis described Mr. Atwood as doing "quite well" on his new medications, however he still had "minimal diarrhea" for which he was taking Imodium.

Again, on February 23, 2004, Mr. Atwood underwent a partial hemilaminectomy with foraminotomy at the left L3-L4 level without complication.  In May, 2004, Dr. Hughes examined him, finding some tenderness as a result of the surgery, paresthesia in both arms, and that Mr. Atwood suffered alternating diarrhea and constipation and profound fatigue, all as a result of the antiretroviral medications.

## C. Ability Assessments

On October 16, 2002, Dr. William P. Alford, a state agency medical consultant, reviewed Mr. Atwood's records and completed a physical RFC assessment.  He concluded that Mr. Atwood was capable of performing light work - lifting 20 pounds occasionally and 10 pounds frequently, standing/walking about 6 hours in an 8 hour workday and sitting about 6 hours in an 8 hour workday.  He found no need for postural, manipulative, visual, communicative or environmental limitations.

On October 29, 2002, based upon the headaches, chronic diarrhea and weakness Mr. Atwood suffered as side effects due to the antiretroviral medication, Dr. Hughes opined that "he

is unable to be gainfully employed".  Dr. Davis expressed a similar opinion in her letter of

November 5, 2002.

In January 2003, Dr. Hughes opined that Mr. Atwood was unable to work longer than 4

hours at a time based upon Mr. Atwood's medical history and a recent job dismissal due to

inability to concentrate.

In September 2003,  Dr. Davis opined that Mr. Atwood had marked difficulties in social

functioning and in his ability to complete tasks in a timely manner due to deficiencies in

concentration, persistence, and pace.  Dr. Davis noted that Mr. Atwood's antiretroviral

medications caused adverse effects of "fatigue and mushy/diarrheal stools".

On May 4, 2004, after the decision had been issued by the ALJ[2], Dr. Hughes completed a

mental impairment questionnaire and physical assessment, to which was attached a typed

summary.  It states in pertinent part:

> A: 1) Depression exacerbated by chronic illnesses to include his HIV and chronic back
> pain, reasonable [sic] well controlled on Paxil.  2) Chronic back pain with now [sic] status
> post three back surgeries. 3) HIV.
> P: 1) Could consider Paxil doses increase.  However, his psychomotor agitation,
> emotional lability and anxiety  -  all from the illness all interfere with his ability to really
> work gainfully employed. 2) limitations of really no heavy lifting above 20 lbs.
> occasionally and no more than 10 lbs frequently and chronic daily pain limit ability for any
> sort of gainful employment.  Inability to sit or stand for longer than ½ hour at stretches
> limit ability as well in that regard.  Chronic paresthesia along his arms and legs also make
> chronic repetitive work and even desk work difficult to do on any sort of regular basis. 3)
> His CD4 count and viral lodes were actually good recently; however, the medications he is
> on do cause symptoms that contribute to seek gainful employment [sic].  Also the
> secondary side effect of lipodystophy, dyslipidemia, and DM are all exacerbated by his
> HIV.  Chronic fatigue is a well known symptom of HIV treatment and side effects of
> medications.  I believe that all the combining factors above limit Mr. Atwood's ability to
> work in any sort of gainful employment at this time.

---

[2]These last two items were submitted for consideration by the Appellate Council.

In the assessment, Dr. Hughes opined that Mr. Atwood could sit only 4 hours in an 8-hour workday, stand/walk only ½ hour at a time and 4 hours in an 8-hour workday, and needed to rest/lie down 2 hours during an 8-hour workday.  He further opined that Mr. Atwood would be absent from work more than 4 times per month as a result of impairments and treatment.  Like Dr. Davis, Dr. Hughes stated that the side effects of which Mr. Atwood complained were common to the antiretroviral medications he was taking.

In December 2, 2004, physical therapist Pat Riley completed a functional capacity evaluation (FCE).   This evaluation found Mr. Atwood to be "markedly" deconditioned.  He could lift and carry up to 20 pounds, but could sit only 2 hours and stand/walk 3 hours in an 8-hour workday.

## IV.  ANALYSIS

This Court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and whether the correct legal standard was applied. *See Castellano v. Secretary of Health & Human Serv.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  In doing so, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *See Casias v. Sec. of Health & Human Serv.*, 933 F.2d 799, 800 (10th Cir 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *See Campbell v. Bowen*, 822 F.2d 1518, 1521(10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "There must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Ricketts v. Apfel*, 16 F Supp. 2d, 1280, 1287 (D Colo. 1998) (quotations and citations omitted).

Here, the challenges to the ALJ's decision (which was adopted by the Commissioner) are limited. Mr. Atwood challenges only the ALJ's Step 4 determination - in particular, his assessment of Mr. Atwood's subjective complaints as to the side effects of the antiretroviral medication and the opinions of his treating physicians.

**A. Did the ALJ err in assessing Mr. Atwood's subjective complaints as to the side effects of the antiretroviral medication?**

In assessing the credibility of subjective complaints, an ALJ must make specific evidentiary findings regarding credibility and cannot simply state that the complaint is not disabling. *Luna v. Bowen*, 834 F2d 161, 165 (10th Cir 1987). Under *Luna*, the ALJ must consider 1) whether the subjective complaint has been demonstrated by objective medical evidence; 2) if so, whether there is a loose nexus between the proven impairment and the subjective complaint; and 3) if so, whether considering all of the evidence, both objective and subjective, the claimant's pain is disabling. Objective evidence includes physiological and psychological evidence that can be verified by external testing. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488-89 (10th Cir. 1993). Subjective evidence comprises statements from the claimant and other witnesses that are evaluated on their credibility. *Id.* at 1489.

Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988). However, credibility findings should not be upset if supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir 1995). The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints not credible. However *Kepler* does not require a formalistic factor-by-factor recitation of the

evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir 2000).

Here, the ALJ found that Mr. Atwood's subjective complaints of profound fatigue and diarrhea as side effects of the antiretroviral medication were "not fully credible". He did not expressly follow the *Luna* litany, but set forth the evidence upon which he relied with regard to the first and third factors. With regard to the first factor, he found that the "objective evidence does not support" the symptoms. He referred to Mr. Atwood's CD4 and lymphocyte counts, decreasing viral load, and successful antiretroviral response. He stated that Dr. Hughes had reported that "objective tests for corroboration" had not been done. Then in evaluating the severity of the complaints, the ALJ observed that when "claimant's medications were adjusted, the side effects were resolved and his condition improved". In addition, he pointed to Dr. Davis' comment that Mr. Atwood had "intermittent problems with his medications", and observed that when new medications were prescribed in July 2003, he had only minimal diarrhea. Based on this evidence, the ALJ concluded that Mr. Atwood's side effects were not intense, merely an inconvenience, and that adjustment in medication was effective in controlling them.

Having reviewed the record, this Court has concerns about the ALJ's first conclusion - that there was no objective evidence to support the subjective complaints. It appears that the ALJ confused the evidence relating to Mr. Atwood's HIV condition with the evidence pertaining to the side effects of the antiretroviral regimen. The indicia of success in reducing viral load, CD4 and lymphocyte counts and antiretroviral response measure all pertained to fighting the HIV and are irrelevant to evaluating the existence or severity of the side effects caused by the antiretroviral

10

regimen.  The ALJ also misread Dr. Hughes' notes of January 30, 2003.  The reference that the

ALJ makes is to a handwritten notation (Tr. 224) that he interprets as "objective **tests for**

**corroboration** have not been done."  Although difficult to read, viewing this language in context,

it appears to read "objective **tests for concentration** have not been done."

The medical record is replete with Mr. Atwood's complaints about nausea, diarrhea and

profound fatigue. These are, by their nature, subjectively experienced and would be difficult to

document by objective testing.  However, according to both Drs. Davis and Hughes, the

antiretroviral medication is  renown for causing such side effects.  Thus, there is both objective

evidence to support the subjective complaints and a nexus between the two.

As to the severity of the complaints, the ALJ discounts Mr. Atwood's testimony because

he finds that some symptoms, particularly the diarrhea, was intermittent and fully addressed by

adjustments in medication.  The difficulty here is that the evidence the ALJ refers to pertains

primarily to the consistency of the symptoms and secondarily to their severity, and it fails to note

the complex and fluctuating treatment that Mr. Atwood received.

During the operative time period (February 2002 to October 2003), Mr. Atwood

frequently visited his doctors who assessed his need for antiretroviral medication. Sometimes he

took antiretroviral drugs; sometimes he did not; sometimes he took one drug but not another, all

depending upon his condition at a particular time.  When he took the antiretroviral medication, he

suffered from diarrhea, fatigue and headaches.  The severity of the diarrhea sometimes was

reduced, particularly if Kaletra was not prescribed, but it never completely abated.  The weakness

and profound fatigue persisted both when he was on the antiretroviral regimen and when he was

not. These symptoms were serious enough that both Drs. Davis and Hughes opined that they

would affect his ability to work   Dr. Davis stated in her letter of 11/5/02 (Tr. 213) that the

gastrointestinal distress would "cause a significant amount of absenteeism"; Dr. Hughes stated

that he believed that these symptoms would bar gainful employment in his letter of October 29,

2002 and made similar statements in later reports.

 When Mr. Atwood was not on the antiretroviral regimen[3], either because his AIDS

symptoms had reduced or because he was too ill to sustain such treatment (anemia requiring

hospitalization in Spring 2003), he did not suffer from diarrhea, but continued to experience

profound fatigue.  Dr. Hughes reports in May, 2004  that the long term effects of the

antiretroviral treatment include paresthesia in Mr. Atwood's arms. Even the Functional Capacity

Evaluation of December 4, 2004 (Tr. 334), contains the conclusion that Mr. Atwood is "markedly

de-conditioned and needs gradual re-introduction into the workplace".

This Court cannot say that the ALJ's conclusions as to the severity of Mr. Atwood's

symptoms is entirely unsupported by evidence in the record, but his rationale for his conclusions

are conclusory, simplistic and fail to reflect the complexity of the record.  This Court is left with

the impression that the ALJ did not understand the full nature of the disability that Mr. Atwood

claims nor the significance of the medical evidence presented.  For this reason, remand for

reconsideration is appropriate.

**B.  Did the ALJ err in assessing the opinions of the treating physicians?**

In determining how much weight the opinion of a treating source must be given, the ALJ

must determine the nature of the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th

---

[3]  From the record, it appears that he did not receive antiretroviral medication between
March and May 2002, and from at least May to July 2003.  Between December 2003 and January
2003, he did not take Kaletra.  This represents approximately 5 months of the 20 month period.

Cir. 2003).  As to the nature and severity of the claimant's impairments, including the claimant's

symptoms, diagnosis and prognosis and any physical or mental restrictions, the opinion of the

claimant's physician must be given controlling weight if it is supported by clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See*

*Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).  To reject this type of opinion, the ALJ

must give specific, legitimate reasons and show good cause.  *See Frey v. Bowen* 816 F.2d 508,

513 (10th Cir. 1987).   An ALJ can reject this type of opinion if it is conclusory and inconsistent

with the objective medical evidence.  *See Castellano,* 26 F.3d at 1029.

　　　A second type of opinion, that the claimant is totally disabled, can be rejected without

explanation.  This is because the opinion falls within the scope of responsibility of the ALJ.  *See*

*Castellano*, *supra*.

　　　Here, the ALJ has not specifically identified the opinions of Dr. Hughes and Dr. Davis, nor

classified than as to type; he states only that he gives them little weight.  Clearly, their opinions

that Mr. Atwood is disabled or cannot be gainfully employed fall into the second category and

could be summarily dismissed.  However, they gave several other opinions, diagnosing and

treating the side effects Mr. Atwood experienced, stating that such side effects consistent with the

usual side effects of the antiretroviral medication, and stating that such side effects would likely

cause substantial absenteeism from work.  In addition, Dr. Hughes assessed Mr. Atwood's

functional capacity.  These were directly related to the doctors' diagnosis, treatment plan and

prognosis.  To the extent he rejected or gave less than controlling weight to these opinions, the

ALJ was required to give specific reasons.  He did not.

　　　The Commissioner argues that the ALJ's reasons for rejecting the doctors' opinions are

embodied in his analysis of Mr. Atwood's credibility and are tied to the success of the treatment program in dealing with his HIV condition.  As noted earlier, such comments reflect a confusion about the record and nature of Mr. Atwood's claimed disability.

For this reason, the decision must be reversed and remanded.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**, that the Commissioner's determination that the Claimant is not disabled is **REVERSED** and this matter is **REMANDED** for further proceedings.  The Court notes that new information was submitted to the Appellate Council.  Such information may be considered on remand, and should the Claimant seek to extend the disability period with a new claim, determination of such claims may be made concurrently.

Dated this 21st day of September, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge

-14-